UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

RONDEL MENENDEZ,
    Plaintiff,

vs.                              Case No.

TRUGREEN LIMITED PARTNERSHIP,
    Defendant.
_____/

## COMPLAINT

Plaintiff, RONDEL MENENDEZ, sues Defendant, TRUGREEN LIMITED PARTNERSHIP, and states as follows:

### JURISDICTION

Jurisdiction in this Court is proper under 29 U.S.C. §1331 as this action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e.

### VENUE

Venue is proper in this Court as Defendant is a corporation conducting business within the Southern District.

### CONDITIONS PRECEDENT

All conditions precedent to the filing of this suit have been met. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity

Commission ("EEOC") within 300 days of the discriminatory/retaliatory events. See Exhibit A. The Plaintiff received a Determination and Notice of Rights issued on April 29, 2022, and filed suit within 90 days of receipt. See Exhibit B.

## **FACTUAL ALLEGATIONS**

1. Plaintiff's race is Black.

2. Plaintiff was hired as a Residential Outside Sales Representative to work for Defendant at the Vero Beach, Florida location in February 2020.

3. During his employment, all of the management staff employed by Defendant were white males.

4. Shortly after Plaintiff began his employment, the Coronavirus pandemic broke out.

5. As a result, Defendant reassigned Plaintiff, along with other Residential Outside Sales Representatives, to work in Residential Lawn Technician positions at the end of March 2020.

6. Typically, when a person begins in the Lawn Technician position, he receives two weeks of training.

7. Plaintiff was only given one week of training, instead of two weeks.

8. Plaintiff raised the concern about whether he was sufficiently trained since he had not received the second week of training.

9. During his training, the Lawn Service Technician Manager, Ted Waters, made a statement to Plaintiff to the effect that "older guys normally do not last very long performing this type of work" and that Plaintiff would not make it through training. At the time, Plaintiff was 45 years old.

10. Plaintiff assured Mr. Waters that he would complete the training to which Mr. Waters replied, "You Black Democrats."

11. Plaintiff did not immediately report Mr. Waters comments but did so after another incident occurred with Mr. Waters.

12. Specifically, Plaintiff was having an issue with a leak in his truck and was discussing this with the Branch Manager, Steve Marini. When Mr. Waters saw Plaintiff and Mr. Marini talking, he began yelling at Plaintiff and accusing him of not changing the filter and causing the leak. This occurred in the parking lot in front of other employees. Plaintiff and Mr. Marini had checked the air filters and that was not the issue. Plaintiff told Mr. Waters that he could not speak to him in this manner. Before the situation escalated, Mr. Marini asked Plaintiff to come back to the office. It was at this time that Plaintiff told Mr. Marini about the inappropriate age and race comments that Mr. Waters had previously made. Mr. Marini apologized,

making a statement to the effect that was how Mr. Waters is, but nonetheless, Mr. Marini said he would speak to Mr. Waters.

13. Although Mr. Water did not make further comments regarding age or race directly to Plaintiff, Mr. Waters did make inappropriate racial comments to other minorities in Plaintiff's presence.

14. Additionally, Mr. Waters had a rebel flag on the back of his work binder.

15. When Residential Lawn Technicians are hired by Defendant, new uniforms are ordered specifically for the new employee. While waiting for the new uniforms to arrive, the new employee is supposed to be provided with new sample uniforms to wear until their uniforms arrive. Instead, Plaintiff was provided with used uniforms of former employees. After filing his Charge of Discrimination in February 2021, Plaintiff received new uniforms.

16. The oldest trucks were provided to minority employees. One of those trucks did not have air conditioning. Plaintiff got a truck that Defendant identified as newer, but this was only because the oldest trucks were already assigned to minorities. When new trucks were purchased, these were provided to the new white employees rather than to Plaintiff or any other minorities.

17. At some point, Plaintiff was moved from Residential Lawn Technician to Commercial Lawn Technician.

18. Plaintiff was not provided any training related to Commercial application.

19. Rather, he was sent out with another technician who regularly performed Commercial work for half a day.

20. The following day, Plaintiff was sent out to do Commercial work alone. Plaintiff does not have a license to perform Commercial work. He expressed concern about whether he knew enough to properly do the job but was directed to do it.

21. Since directed to do so, Plaintiff went to the Commercial location he was told to and began work when the Property Manager for the location approached him and asked him to leave the premises because he was spraying instead of using granular. Plaintiff called the office and asked them to send someone to the location who was familiar with what was supposed to be done there. Plaintiff was directed to return to the office, get the granular and return to perform the work. Since he had already been asked to leave the premises, Plaintiff was not comfortable doing this. At that point, Plaintiff was directed to go home, which he refused to do since he believed the Defendant would consider it job abandonment. After this

incident, Plaintiff refused to perform Commercial work and went back to performing Residential work.

22. During group training of employees to learn how to make updates on a tablet, Plaintiff was singled out, demeaned, and yelled at in front of other employees. Initially, the Manager wrote Plaintiff up for his behavior. However, after Plaintiff complained to Human Resources about being inappropriately treated, the write up was taken off his record.

23. Due to the Coronavirus pandemic, Defendant lost a significant number of employees. Since there were so few employees and Plaintiff was one of the most senior, he was asked to perform training. He was required to do this in addition to his regular workload for no additional pay. Subsequently, one of the white employees whom Plaintiff trained was asked to perform training. The employee reported to Plaintiff that once he began training, he no longer had to perform his regular route, was given a title related to training and an increase in pay.

24. Plaintiff received a 3 out of 5 rating on his performance evaluation although he was performing better than other technicians. Plaintiff believes he received this rating because of his race.

25. Plaintiff was terminated just months after filing his Charge of Discrimination for allegedly damaging a truck. However, Plaintiff did not damage a truck. While backing up Plaintiff caused a dent in the carrier of a spreader that was loaded on the truck. Had Plaintiff not reported this to management, they would not have known about the damage. In contrast a white male caused significant damage to the truck he was driving and was permitted to continue working for Defendant.

## COUNT 1--RACIAL DISCRIMINATION UNDER TITLE VII

Plaintiff incorporates all prior paragraphs as if fully stated herein.

26. Plaintiff was given less training than white employees in the same position.

27. Unlike white employees, Plaintiff was not provided new sample uniforms to use until his uniforms arrived.

28. Based on his race, Plaintiff was singled out and yelled at on multiple occasions.

29. Plaintiff was required to do training while still performing his regular duties without additional pay. One of the white employees whom he trained, no longer had to perform his regular duties when he began training, was given a pay increase.

30. Based on his race, Plaintiff was required to do Commercial spraying with no training and no license.

31. Based on his race, Plaintiff was given a 3 out of 5 rating on his performance evaluation.

32. Minorities were given older trucks than white employees.

33. The unequal treatment to which Plaintiff and other minorities were subjected occurred in an atmosphere where inappropriate age and race comments were tolerated, inappropriate racial comments were being made to other minorities and the manager had a rebel flag on his work binder.

34. Plaintiff was terminated for allegedly causing damage to his work vehicle when a white employee who caused severe damage to his work vehicle was not terminated.

35. Plaintiff did not cause damage to his work vehicle but caused minor damage to a spreader which would not have even been known to management had Plaintiff not reported it.

**WHEREFORE**, Plaintiff demands damages for lost wages/back pay, benefits, front pay, emotional distress damages, punitive damage, and all other

compensatory damages allowable under law, attorney's fees and costs and any other relief that the Court deems just and proper.

## COUNT 2--RETALIATION UNDER TITLE VII

Plaintiff incorporates all prior paragraphs as if fully stated herein.

36. Plaintiff filed a Charge of Discrimination with the EEOC in February 2021.

37. Plaintiff was terminated in June 2021-just months after the filing of his Charge.

38. Defendant's stated reasons for Plaintiff's termination are pretextual.

39. Plaintiff was terminated in retaliation for filing his Charge of Discrimination.

**WHEREFORE**, Plaintiff demands damages for lost wages/back pay, benefits, front pay, emotional distress damages, punitive damage, and all other compensatory damages allowable under law, attorney's fees and costs and any other relief that the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues.

| | |
|---|---|
| Dated: July __, 2022, | Respectfully submitted,<br><br>*/s/Beth Coke*<br>Beth Coke<br>Fla. Bar. #70726<br>Beth@cokeemploymentlaw.com<br>Coke Employment Law<br>131 N. 2nd Street, Suite 204<br>Fort Pierce, Fl. 34950<br>Telephone: (772) 252-4230<br>Facsimile: (772) 252-4575<br>Attorney for Plaintiff |